IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 4:17-cv-52 |
| | § | |
| One Rolex Watch, et al, | § | |
| Defendants. | § | |

## **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States of

America, Plaintiff, brings this complaint and alleges as follows:

Nature of the Action

1.      This is an action to forfeit property to the United States for violations of 18

U.S.C. §§ 1952, 1956, and 1957.

Defendant In Rem

2.      The following properties seized pursuant to a search warrant on August 26,
2016, constitute the Defendant Properties:

Personal property seized from Sun Im Mount and/or Cameron Mount:

    a.      One Rolex Watch
    b.      One Gold Belex Watch
    c.      Two Cartier Watches
    d.      One Piaget Watch

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 1 of  13**

    e.      One Cartier Wedding Ring
    f.      One Silver Color Necklace with White Stones
    g.      One Pearl Color Necklace
    h.      One Gold Color Necklace with White Beads
    i.      One Silver Color Bracelet with White Stones
    j.      One 2015 Toyota Camry
    k.      $29,030.00 in U.S. Currency seized from 7041 Fullerton Drive, Plano, Texas

Funds seized from Wells Fargo accounts owned by Sun Im Mount or Cameron Mount:

    l.      $49,451.00 seized from Wells Fargo account number x1425
    m.      $53,580.00 seized from Wells Fargo account number x9091
    n.      $10,023.00 seized from Wells Fargo account number x8404
    o.      $136,300.00 seized from Wells Fargo safe deposit box
    p.      $8,935.10 seized from Wells Fargo account number x0913

Funds seized from a Whilshire bank account owned by Sun Im Mount and/or Cameron Mount:
    q.      $59,646.83 seized from Wilshire account number x1287

Funds seized from Shinhan Bank owned by Sun Im Mount and/or Cameron Mount:

    r.      $19,044.54 seized from Shinhan Bank account number x4963
    s.      $9,425.85 seized from Shinhan Bank account number x2929
    t.      $18,705.68 seized from Shinhan Bank account number x8712
    u.      $90,721.97 seized from Shinhan Bank account number x1071
    v.      $9,425.85 seized from Shinhan Bank account number x2910

<u>Jurisdiction and Venue</u>

5.    The Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 2 of  13**

6.     The Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

Basis for Forfeiture

8.     The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), because it is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, which is an offense constituting a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7) because it is an act or activity constituting an offense listed in 18 U.S.C. § 1961(1), and pursuant to 18 U.S.C. § 981(a)(1)(A) because it is any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, or any property traceable to such property.

Facts

9.     The Defendant Property is subject to forfeiture based on the following facts:

a.     In March 2015, Homeland Security Investigations (HSI), working jointly with the Texas Department of Public Safety (DPS) and the Dallas Police Department (DPD), began an investigation into local illicit Korean Massage Parlors

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 3 of  13**

(KMPs) fronting as "massage parlors" and "spas" but suspected to be engaging in prostitution, human trafficking, and harboring illegal aliens.  Investigators have identified the owners and operators of a select group of the Dallas area KMPs and have conducted numerous undercover operations and witness interviews confirming that these businesses are merely fronts for prostitution activity.

      b.     A woman identified as Sun Im Mount and others collect the cash from various illicit massage parlors in the Dallas area and transport it through the Eastern District of Texas into Oklahoma, where the money is distributed to others in the conspiracy and laundered through casinos.

      c.     In July 2015, based on the information received from an informant who worked as a sex worker in Dallas, investigators acquired a pen register on a business known as the "Doll House" located at 5012 Sharp Street, Suite A, Dallas, Texas.  On October 26, 2015, DPS investigators observed a Toyota Camry registered to Sun Im Mount at that location.  Sun Im Mount was observed exiting the vehicle and carried a large blue backpack style purse into the Doll House through the side door.

      d.     On February 5, 2016, investigators observed Sun Im Mount's Toyota Camry parked in the parking lot of Gold One Spa and Empire Spa located at 2018 W Northwest Hwy, Dallas, Texas, each known illicit massage parlors.  Sun Im Mount exited the doors of Gold One Spa, entered her vehicle, and left the area.  On March 17, 2016, an undercover officer was conducting an investigation at Gold One Spa and arrested an

employee for prostitution after the employee agreed to perform certain sexual acts in exchange for payment.

   e. Data showed that Sun Im Mount's phone number frequently called the owner of the property located at 11308 Emerald Street, which incorporates the buildings from which several illicit massage parlors called Smile Spa, Hulahand, Moon Night, and Elegant Spa, operate.  On February 17, 2016, an undercover officer posed as a customer and an employee at Smile Spa agreed to several sex acts in exchange for money, at which point the employee was arrested for prostitution.  After the arrest, investigators observed Sun Im Mount arrive and park at Elegant Spa.

   f. On February 17, 2016, a DPS Highway Patrol Trooper conducted a traffic stop on Sun Im Mount.   After receiving verbal consent to search, the DPS Trooper located a large Ziploc bag containing numerous condoms and about eight thousand five hundred ($8,500) dollars in Sun Im Mount's blue purse.

   g. On March 19, 2016, Customs and Border Protection (CBP) conducted outbound inspections on all passengers of Korean Airline Flight 32 (KE32), which included Sun Im Mount and her husband Cameron Mount.  During questioning by CBP officers, Sun Im Mount stated she is not employed and that she is a stay at home wife. Cameron Mount stated to CBP that he is employed as a radiologist. The Mounts were asked if they were traveling with any large sums of money. Cameron Mount stated he had $10,000.00 in U.S. currency, and Sun Im Mount stated she was carrying

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 5 of  13**

$10,000.00 in U.S. currency as well.  CBP officers reported that Sun Im Mount and

Cameron Mount stated that they have never filled out a financial report before regarding

taking money in and out of the U.S. CBP Officers located approximately $20,000.00 in

cash in the Mount's backpacks.

       h.     On May 12, 2016, investigators met with a Source of Information

(SOI) regarding several illegal brothels. SOI stated he/she has been working in the "Spa"

circuit in North Texas for approximately three (3) years. SOI stated that an advertisement

for employment at the "Doll House" was posted on Backpage.com. The SOI stated he/she

worked at Doll House for approximately three (3) years.  The SOI stated that SOI would

be performing commercial sex acts in exchange for money with men. SOI stated on

average fifteen (15) girls worked at Doll House at any given time.  The SOI stated SOI

has worked as a sex worker for Seven Star, Dupond, Hometown, and Green Spa.

       i.     The real property location Hometown Spa is owned by Sun Im

Mount and Cameron Mount and Hometown Spa is operated by James Andrade and Su Jin

Choi.  An advertisement for Hometown Spa, in the February 18, 2016, issue of Back

Page.com, a website commonly used to advertise for sexual services, depicted young

Asian females appearing scantily clad.  The advertisement does not mention massage or

provide a massage license number.

       j.     On May 24, 2016, investigators again met with the SOI and provided

several photo lineups.   The SOI identified Su Jin Choi's photo as "Emo" and could not

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 6 of  13**

recall her name. The SOI stated "Emo" worked at the Doll House and would collect door fees and tip outs.  The SOI identified Sun Im Mount's photo as a person she has seen visiting the brothels. The SOI stated that Sun Im Mount never worked in the brothels but would pick up money from the brothels and deliver supplies to the brothels.

k.      On July 14, 2016, investigators interviewed another Source of Information (SOI2).  SOI2 worked at the Doll House, Jasmine, and 7 Star spas, as well other illegal brothels operating in North Texas.  SOI2 stated that when SOI2 was working at the spas SOI2 was performing commercial sex acts.  After reviewing a photo lineup, SOI2 identified Sun Im Mount as the person who brings condoms and supplies to the girls and the Asian Massage parlors that are operating as illegal brothels in the Dallas area. SOI2 explained that SOI2 would see Sun Im Mount bring supplies to all of the brothels SOI2 worked at.

l.      On June 28, 2016, Sun Im Mount was observed at the parking lot of Gold One Spa and Empire Spa in Dallas, Texas.  She later drove to the Dupond Studio Spa and 7 Star Spa, located at 2644 Walnut Hill Lane, Dallas, Texas.  Dupond Studio is classified by internet website www.adultsearch.com as a Dallas, Texas, erotic massage studio. 7 Star Spa was raided by DPD and the FBI in June 2013 for being part of a prostitution ring.  She later drove to the Green Spa rear parking lot area, located at 10969 Shady Trail #101 Dallas, Texas.  She later drove to a shopping strip consisting of three businesses, including Number 1 Spa and Lucky Spa.

m.     A summary of Sun Im Mount's daily spa destinations from December 2015 through July 2016 showed 12 visits to Hometown Day Spa, 35 visits to Green Spa, 33 visits to Empire Spa and Gold One Spa, 20 visits to Dupond Studio Spa and 7 Star Spa, and 16 visits to Number 1 Spa.

n.     Money collected by Sun Im Mount from the brothels is transported through the Eastern District of Texas into Oklahoma, where the money is distributed to others in the conspiracy and laundered through casinos.

o.     Between November 2015 and July 2016, Sun Im Mount was observed visiting the WinStar Casino in Oklahoma 33 times, with 17 visits in December 2015 alone.

p.     On December 14, 2015, WinStar Casino security operations confirmed it was aware of Sun Im Mount and her irregular gambling habits.  WinStar had begun an investigation into Sun Im Mount's activities on November 1, 2015, for suspicion of money laundering in addition to Su Jin Choi and others.

q.     On November 1, 2015, Sun Im Mount lost a total of $148,000.00 in U.S. currency in one sitting at a gambling table at WinStar Casino.  WinStar investigators have observed Sun Im Mount in possession of large sums of U.S. currency contained in her purse.

r.     On November 2, 2015, Sun Im Mount and Su Jin Choi were observed gambling at a card table at the Winstar Casino.  Winstar Casino personnel

observed Sun Im Mount surreptitiously withdraw several stacks of one hundred dollar

bills from her purse and hand it under the table to Su Jin Choi.

      s.     Records from Winstar Casino show that on November 1, 2015, Sun

Im Mount's player's card revealed that Sun Im Mount had a total buy-in of $15,400.00

with a win of $7,600.00. Winstar Casino reported on that on November 2, 2015, Sun Im

Mount's card revealed that Sun Im Mount had a buy-in of $25,300.00 and a loss of

$24,040.00. Su Jin Choi's player's card records showed that on November 2, 2016, she

had a buy-in of $53,000.00 and loss of $18,000.00.

      t.     WinStar Casino investigators reported that between Sun Im Mount,

Su Jin Choi, and others, approximately $3.3 million has been distributed and possibly

laundered through Winstar Casino within a few months.  Winstar Casino records

reflected that from August 2015 to January 2016, Sun Im Mount had a total buy in of

$624,500.00 and a theoretical total loss of $153,319.00.  Su Jin Choi's Winstar Casino

player's card reflected that within the same six months of Sun Im Mount's activity, Su Jin

Choi had a total buy-in of $1,933,160.00 and a theoretical total loss of $393,682.00.

      u.     Sun Im Mount was observed at Winstar Casino throughout 2016 and

the last noted date was August 9, 2016. The investigation has uncovered that Sun Im

Mount, Su Jin Choi, and others, transported their illegal currency into and through the

Eastern District of Texas as they travel to casinos in both Oklahoma and Louisiana.

v.      Texas Workforce Commission (TWC) records reflect Sun Im Mount received no wages for the period of 2013 through the 1st Quarter of 2016. TWC records reflect Cameron Mount received wages of $52,052.00 in 2014, $52,765.77 in 2015, and $13,138.19 for the 1st Quarter of 2016. In addition, Cameron Mount receives monthly retirement payments from the U.S. Department of Veterans Affairs and U.S. Treasury Department.

w.      The records for the Mounts' Bank of America account reflected that the Mounts deposited $308,880.00 in 2013, and $71,300.00 through May 2014, when the accounts were closed.  The records for the Mounts' Wells Fargo personal bank accounts reflected that the Mounts deposited or caused to be deposited $147,300.00 in 2015 into their personal accounts.

x.      Texas State Comptroller records reflect Cameron Mount registered ACDC Investment LLC on July 13, 2015.  Wells Fargo Bank records reflect the Mounts opened a business checking account for their corporation on July 16, 2015, at a Plano, Texas, branch with an initial deposit of $8,000.00 in U.S. currency.  Records show that the Mounts deposited or caused to be deposited $53,500.00 into their corporate account for the 7 ½-month time period of July 16, 2015, through February 2016.

y.      The Mounts' Wells Fargo Bank records, account number x1425, show check number 126, dated June 5, 2015, was written to Stewart Title Company in the amount of $20,000 for earnest money.  The records further indicate that there was

$520,000 withdrawn from the account by Cameron Mount on July 6, 2015.  Stewart Title Company information shows that Cameron Mount purchased the real property at 2661 Walnut Hill Lane, Dallas, Texas, for a total of $540,000 using a $20,000 check for earnest money and another $520,000 in the form of a Wells Fargo Cashier's check. These checks out of the Mount's Wells Fargo bank account were written for the cash purchase of the property.

z.      The real property located at 1020 Moonstone Street, Carrollton, Texas, 75007, was purchased by Mal Yeob James for cash on March 4, 2016, for $385,498.78. The warranty deed with vendor's lien and the deed of trust were recorded on March 4, 2016.  Based on current records of the Denton County Recorder, there is a lien of $350,000 by Sun Im Mount.  Priority Title Company records reflect that Sun Im Mount is a private lender and a promissory note, dated March 4, 2016, lists Sun Im Mount as the beneficiary of the note.  The promissory note states that the note is to be paid in installments in the amount of $3,761.12 beginning on the 4th day of April, 2016, and continuing until paid in full.  For the years 2015 and 2016, no wages were reported by TWC Records for Mal Yeob James.

aa.     The Mounts' Shinhan bank account number x4963 shows that a bank wire, dated March 2, 2016, in the amount of $350,000 was sent to Priority Title Company. Priority Title Company records show that $350,000 was received from Sun Im Mount on March 4, 2016, for the purchase of the 1020 Moonstone Street.

Potential Claimants

10.     The known potential claimants to the Defendant Property are:

a.       Sun Im and Cameron Mount – 7041 Fullerton Drive, Plano, Texas, 75024.

Claim for Relief

11.     The United States respectfully requests that the Court forfeit the Defendant Property to the United States, award costs and disbursements in this action to the United States, and order any other relief that the Court deems appropriate.

Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY

/s/ _____
Camelia Lopez
Assistant United States Attorney
Texas Bar No. 24036990
101 East Park Boulevard, Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 (fax)
camelia.lopez@usdoj.gov

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Terri Gillespie, hereby state that:

1.      I am a Special Agent with the Department of Homeland Security,
        Homeland Security Investigations.

2.      I have read this Complaint, and the information contained herein is true and
        correct to the best of my knowledge.

3.      The information contained in this Complaint comes from the official files
        and records of the United States, statements from other law enforcement
        officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

*Terri Gillespie*

Terri Gillespie
Special Agent

Dated: 1/20/2017

**U.S. v. One Rolex Watch, et al. - COMPLAINT**
**Page 14 of 14**